1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RIGO, | NO. 11-CV-64-MMA(DHB) |
| Plaintiff, | **ORDER ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD;** |
| vs. | |
| KASON INDUSTRIES, INC., *et al.*, | **JUDGMENT AND DISMISSAL** |
| Defendants. | |

On July 8, 2013, this matter came before the Court on Plaintiff's Motion for Final Approval of Proposed Settlement and Award of Attorneys' Fees and Reimbursement of Expenses.  [Doc. No. 91.]  For the reasons explained below, the Court **GRANTS** Plaintiff's motion in its entirety.

## I.  BACKGROUND

### A.    Factual Background

The individually named plaintiff in this action is John Rigo, a resident of San Marcos, California, doing business as Altered Air, a sole proprietorship.

Defendant Kason Industries, Inc. ("Kason"), a New York corporation with its corporate headquarters and principal place of business located in Georgia, is engaged in the manufacture and sale of Food Service Equipment Component

1  Hardware ("Hardware Components").  Its products are used in commercial food
2  service equipment, including walk-in and stand-alone refrigerators and freezers.

3    Defendant Peter A. Katz was the president of Kason, and managed Kason's
4  business operations until May 29, 2009.

5    Defendant Component Hardware Group, Inc. ("CHG"), a Delaware
6  corporation with its principal place of business in New Jersey, is a global distributor
7  of Hardware Components.

8    Defendant Thomas Carr ("Carr") was the president and CEO of CHG until
9  February 9, 2009.

10    Plaintiff's claims arise from Defendants' participation in a conspiracy to fix
11  prices and allocate customers and markets for Hardware Components.

12    The components themselves are items like hinges, brackets, latches, fasteners,
13  metal racks, drawer pans, casters, mounting plates, and so on–essentially, parts used
14  to make refrigerators, and other food storage appliances used in cafeterias and
15  kitchens.

16    There are two types of purchasers of the components:  (1) direct purchasers
17  such as manufacturers of the food storage equipment and replacement parts
18  distributors and service companies; and (2) indirect purchasers such as wholesalers,
19  retailers and consumer/operators, who purchase from manufacturers, distributors,
20  and service companies.  The direct purchasers are not part of this suit – they pursued
21  and settled their own separate class action litigation in another judicial district.  This
22  suit is brought only on behalf of *indirect* purchasers.

23    Throughout the class period, Defendants controlled a significant share of the
24  national market for the components, including the California market.  The market is
25  highly concentrated and conducive to the type of collusive activity in which
26  Defendants allegedly conspired to engage.

27
28

1    Plaintiff alleges that the market for the components is "inextricably

2    intertwined" with the market for food storage equipment because the former exists to

3    serve the latter.  Thus, the cost of the components directly affects the price of

4    equipment.  As such, Defendants' customer allocation and price fixing conspiracy

5    resulted in inflated prices on components, which inflated the price of equipment,

6    which was borne by the indirect purchaser.

7    Plaintiff alleges that because the components are physically discrete hardware

8    elements, when the components are purchased and incorporated into equipment, the

9    components remain unchanged and are thus traceable through the chain of

10   distribution to the indirect purchaser.  As such, Plaintiff alleges that he and other

11   indirect purchasers have participated in the market for the components through their

12   purchases of the components themselves insofar as they were part and parcel of the

13   food service equipment.

14   According to Plaintiff, because of Defendants' control over the Hardware

15   Components market and their collusion to allocate customers and fix prices, he and

16   other indirect purchasers paid supra-competitive prices.  Plaintiff seeks injunctive

17   relief under the Sherman Antitrust Act, 15 U.S.C. § 1, alleging that the anti-

18   competitive effects of the illegal conduct of Defendants continue to be felt in the

19   components market.  Plaintiff also seeks actual and treble damages and costs of suit,

20   including attorneys fees, under the California Cartwright Act, Cal. Bus. & Prof.

21   Code § 16720.  In addition to these two antitrust claims, Plaintiff seeks relief under

22   California's unfair competition laws, Cal. Bus. & Prof. Code § 17200.  Finally,

23   Plaintiff originally alleged a common law cause of action against Defendants for

24   monies had and received, based on a quasi-contractual theory.  Plaintiff alleges that

25   by virtue of the purchase and sale of the components, Defendants entered into a

26   series of implied-at-law contracts that resulted in money being had and received by

27   Defendants at the expense of Plaintiff.

28

**B.    Procedural History**

On January 1, 2011, Plaintiff filed a putative class action Complaint, alleging claims for violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*; California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16720 *et seq.*; California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; common counts/unjust enrichment; and assumpsit.

On March 7, 2011, Defendants collectively moved to dismiss the Complaint. On April 18, 2011, Plaintiff filed a First Amended Complaint, alleging the same claims as in the Complaint, but adding an additional claim for "quasi-contract."  On April 20, 2011, the Court denied Defendants' motion to dismiss as moot.

On May 23, 2011, Defendants moved to dismiss the First Amended Complaint.  On July 19, 2011, the Court issued an order on Defendants' motion to dismiss, dismissing Plaintiff's claims for common counts, assumpsit, unjust enrichment, and quasi-contract against all Defendants.  The Court further dismissed Plaintiff's claim for injunctive relief against the individual defendants.

On September 4, 2012, after the parties consummated a settlement, Plaintiff moved for an order certifying a settlement class and preliminarily approving the class settlement.  On September 21, 2012, the Court tentatively denied Plaintiff's motion.  However, after a hearing on the motion was held, the Court vacated its tentative ruling and allowed the parties to submit supplemental briefing regarding various issues the Court raised in its tentative ruling and at the hearing.

On October 24, 2012, the Court granted Plaintiff's motion for settlement class certification and preliminary approval.  The parties then commenced providing notice to the class and proceeded with the claims administration process.

**C.      The Settlement**

      **1.      The Settlement Class**

The settlement class is comprised of:  All persons or entities (except those provided under the Settlement Agreement), including, but not limited to, individuals, companies, corporations, partnerships, joint ventures, agents, principals, and employees, who purchased Food Service Equipment Component Hardware or Food Service Equipment that incorporated Food Service Equipment Component Hardware anywhere in the United States from a person or entity other than the Defendants from February 1, 2004, through February 11, 2008.  Excluded from the Indirect Purchaser Class are the Defendants, the trial judge and his spouse, parents, siblings or children, and any person deemed by the Court to have properly requested to be excluded from the Settlement.

      **2.      The Settlement Terms**

Upon the Settlement Effective Date, the Claims Administrator will provide each eligible Claim by Claimants with a cash refund out of the net settlement fund, which will consist of $720,000 less fees and costs.

Class members who purchased individual food service Hardware Components will receive a full refund of the purchase price.  Class members who purchased appliances that contain Hardware Components will receive a fixed 1.4% of the amount they paid for the appliance.

The parties have agreed that Defendants will not oppose Plaintiff's motion for attorneys' fees and costs, which seeks $216,000 in attorneys' fees plus $5,052.10 in costs.  The parties have agreed that any attorneys' fees and costs shall be paid from the settlement.

The sole class representative, John Rigo, will receive an enhancement award of $2,500.

1   If the dollar value of claims submitted by class members exceeds the amount

2   of net settlement funds, the claims will be prorated by (1) dividing the remaining

3   settlement funds by the total value of the valid claims submitted, (2) applying the

4   percentage from the above calculation to reduce the total value of an individual

5   claimant's refund, and (3) rounding up the reduced claim value to the nearest dollar.

6                                    **II.   DISCUSSION**

7   **A.      Motion for Final Approval of Class Settlement**

8           **1.       Class Certification**

9           A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the

10  prerequisites of Rule 23(a).  Once subsection (a) is satisfied, the purported class

11  must then fulfill the requirements of Rule 23(b)(3).  Here, the Court previously

12  preliminarily certified the following class:

13          [A]ll persons or entities (except those provided under the Settlement
            Agreement), including, but not limited to, individuals, companies,
14          corporations, partnerships, joint ventures, agents, principals, and
            employees, who purchased Food Service Equipment Component Hardware
15          or Food Service Equipment that incorporated Food Service Equipment
            Component Hardware anywhere in the United States from a person or entity
16          other than the Defendants from February 1, 2004, through February 11,
            2008.  Excluded from the Indirect Purchaser Class are the Defendants, the
17          trial judge and his spouse, parents, siblings or children, and any person
            deemed by the Court to have properly requested to be excluded from the
18          Settlement.

19          At that time, the Court concluded that the proposed classes satisfied the

20  numerosity, commonality, typicality, and adequacy of representation requirements

21  of Rule 23(a).  The Court also found that the proposed class satisfied the

22  predominance and superiority requirements of Rule 23(b)(3).  The Court again

23  certifies the class for the purpose of settlement.

24          **2.       The Settlement**

25                  **a.       Legal Standard**

26          Courts require a higher standard of fairness when settlement takes place prior

27  to formal class certification to ensure class counsel and defendant have not colluded

28

in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "The question [the Court] address[es] is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Courts consider several factors when determining whether a proposed settlement is "fair, adequate and reasonable" under Rule 23(e). Such factors may include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

**b.     Analysis**

> **i.     The strength of the case, and the risk, expense,
> complexity and likely duration of further litigation**

To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), the benefits afforded to members of the class, and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In other words,

> [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted).

Beginning with the strength of the case, Plaintiff avers that while he believed his case was strong, "the case was certainly not without risk in terms of the range of possible recovery."  Specifically, "[i]n attempting to establish liability and damages, Plaintiff faced the risk that there would be disputes whether the allocations at issue resulted in increased product prices and whether such increased amounts were 'passed on' to consumers, and the average out-of-pocket expenses Class members incurred."  Although the range of recovery was from "zero" to "several million dollars," Defendants made it clear to Plaintiff that a high damages award would go uncollected because such an award would place substantial financial strain on them.  Thus, the greatest risk of continued litigation was the possibility that the class would not be able to collect an eventual damages award.

As for the complexity of the case, Plaintiff explains that "the Class . . . faced many risks in proving liability and damages.  Thus, this settlement is likely close to the total amount that could have achieved in terms of actual payment, even at trial.

Absent a settlement, the Class members faced risk of non-recovery and, even in the best case, long delays in receiving any recovery against companies that are having financial difficulties." Plaintiff also faced strong opposition from Defendants in regards to establishing that Defendants' conduct increased component prices.

These factors favor approval.

### ii.     The stage of the proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir.1982)). Here, Plaintiff avers that "[i]n response to both informal and formal discovery, Defendants had supplied a significant amount of evidentiary information amounting to over 1.1 gigabytes of data." It appears class counsel were informed and prepared for settlement discussions.

### iii.     The settlement amount

To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459. While settlement amounts that are close to the plaintiff's estimate of damages provide strong support for approval of the settlement, settlement offers that constitute only a fraction of the potential recovery do not preclude a court from finding that the settlement offer is fair. *Id.* (finding settlement amount constituting 16% of the potential recovery was fair and adequate). Thus, district courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with litigation. *See, e.g.*, *Glass v. UBS Fin. Serv., Inc*., 2007 U.S. Dist. LEXIS 8476, 2007 WL 2216862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement

of wage and hour class action for 25 to 35% of the claimed damages to be reasonable).

Here, the indirect purchaser class members will receive a large percentage of the price they paid for individual Hardware Components or 1.4% of the price they paid for large appliances that contain Hardware Components.  The parties estimate that 1.4% is a fair value, given that large appliances contain many discreet pieces and parts–some or many of which may not be covered by this lawsuit.  Although class members have submitted claims for the total dollar amount they paid for Defendants' products, their actual damages are a fraction of this amount.  Even after proration of claims, class members will receive 40% of the total amount paid for the hardware components.  This 40% appears above and beyond their actual damages, which are a fraction of the price of the components.  Moreover, the settlement amount in this indirect purchaser case is 40% of the related direct purchaser settlement, which settled for $1,800,000.  This percentage is in line with other indirect purchaser cases.  *See, e.g.*, *In re First DataBank Antitrust Litig.*, 205 F.R.D. 408, 412-13 (D.D.C. 2002) (12% of direct purchaser settlement).  The settlement amount is fair and reasonable.

**iv.    Whether the class has been fairly and adequately represented during settlement negotiations**

Plaintiff avers that the class was "represented throughout the course of this litigation by counsel with years of experience in litigating consumer class actions and who have negotiated numerous class settlements that have been approved by courts throughout the United States, including numerous anti-trust settlements."  The class was adequately represented by competent counsel.  This factor supports approval of the settlement.

11CV64

**v.      The reaction of the class to the proposed settlement**

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  The absence of a large number objectors supports the fairness, reasonableness, and adequacy of the settlement.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).  Here, only one class member has opted out of the class.  Moreover, the Court has not received any objections to the settlement agreement or attorneys' fees request.  This factor favors approval of the settlement.

**vi.      Absence of collusion in the settlement process**

Finally, the Court "should satisfy itself that the settlement was not the product of collusion." *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, at *38 (N.D. Cal. Nov. 16, 2007).  Here, the parties were represented by experienced counsel.  The settlement was reached through arms-length negotiations.  Under such circumstances, courts find that class action settlements are free of fraud or collusion. *See Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 525, 527 (N.D. Miss. 2003) (court had no reason to believe that fraud or collusion played role in negotiations and objectors did not suggest otherwise); *In re First Databank Antitrust Litig.*, 205 F.R.D. 408, 412 (D.D.C. 2002) ("[T]here is no reason to question [counsels'] assertion that the settlement agreement is anything but the product of extensive arm's-length negotiations . . . undertaken in good faith after substantial investigation and legal analysis.").  There is no reason to believe that fraud or collusion played a role in this settlement.

### 3.    Conclusion

The Court **GRANTS** the motion, finding that the settlement is "fair, adequate and reasonable" under Rule 23(e).

**B.    Motion for Award of Attorneys' Fees, Costs, and Class Representative Award**

Plaintiff seeks an award of attorneys' fees and costs in the amount of $221,052.10 which represents $216,000 in attorneys' fees and $5,052.10 in costs.

### 1.    Relevant Law

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys fees and nontaxable costs that are authorized by law or by the parties' agreement."  Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys fees using either the lodestar method or the percentage-of-the-fund method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys fees awarded under the percentage method.  *Vizcaino*, 290 F.3d at 1047.  Case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small.  *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 14:6.  California cases in which the common fund is small tend to award attorneys fees above the 25% benchmark.  *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

### 2.    Analysis

Regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable.  *Powers v.*

1   *Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).  The Ninth Circuit has identified a

2   number of factors that may be relevant in determining if the award is reasonable:  (1)

3   the results achieved; (2) the risks of litigation; (3) the skill required and the quality

4   of work; (4) the contingent nature of the fee; (5) the burdens carried by class

5   counsel; and (6) the awards made in similar cases.  *See Vizcaino*, 290 F.3d at

6   1048-50.

7       Here, the results achieved in this case were favorable.  The risks of litigation

8   were real and substantial.  The complexity and duration of the case, coupled with the

9   arms-length settlement negotiations, weighs in favor of awarding the 30% amount

10  that counsel request here.  This is especially true given that counsel aver they

11  incurred fees in a much greater amount.  Moreover, class counsel took this case on a

12  contingent fee basis and had to forego other financial opportunities to litigate it for

13  more than two years.  Also, the request for attorneys fees in the amount of 30% of

14  the common fund falls below the 31.71% average awarded in cases with common

15  funds.  *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001)

16  (noting that in a study of 287 settlements ranging from less than $1 million to $450

17  million, "[t]he average attorney's fees percentage is shown as 31.71%, and the

18  median turns out to be one-third").  Moreover, no class member has objected to the

19  request for attorneys' fees.

20      Finally, class counsel seek reimbursement of out-of-pocket expenses in this

21  litigation, in the amount of $5,052.10.  Class counsel are entitled to reimbursement

22  of the out-of-pocket costs they reasonably incurred investigating and prosecuting

23  this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D.

24  Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970));

25  *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).  The Court finds that the

26  out-of-pocket costs were reasonably incurred in connection with the prosecution of

27  this litigation, were advanced by class counsel for the benefit of the class, and should

28

1   be reimbursed in the amount requested.

2   **3.    Conclusion**

3   The Court **APPROVES** the award of attorneys' fees in the amount of

4   $216,000, as well as class counsel's request for litigation costs and expenses, in the

5   amount of $5,052.10.  The settlement agreement also calls for administration funds

6   to be paid from the settlement fund.  The Court further approves payment of

7   $79,954.84, in administration costs to the class administrator.

8   **C.    Class Representative Incentive Payment**

9   The only class representative in this case is Plaintiff John Rigo.  No class

10  member has objected to Plaintiff's intent to seek an incentive award of $2,500.  The

11  arguably nominal $2,500 incentive award for more than two years of service is well

12  within the acceptable range of approval and does not appear to be the result of

13  collusion.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS

14  114597, *18 (N.D. Cal. Aug. 8, 2012) ("[T]he Settlement provides for an incentive

15  award to the Plaintiff in the amount of $10,000.  In this District, a $5,000 incentive

16  award is presumptively reasonable."); *Williams v. Costco Wholesale Corp.*, 2010

17  U.S. Dist. LEXIS 67731, *19-*20 (S.D. Cal. July 7, 2010) (approving $5,000 award

18  in an antitrust case settling for $440,000).  The Court **APPROVES** the $2,500

19  incentive award as reasonable.

20  **III.    CONCLUSION**

21  The Tentative Ruling issued on July 8, 2013, shall be **WITHDRAWN**.  The

22  Court **GRANTS** Plaintiff's motion in its entirety, finding the proposed settlement of

23  this class action appropriate for final approval pursuant to Federal Rule of Civil

24  Procedure 23(e).  In doing so, the Court finds that the proposed settlement appears to

25  be the product of informed and non-collusive negotiations, and has no obvious

26  deficiencies.  The Court finds that the settlement was entered into in good faith; that

27  the settlement is fair, reasonable and adequate; and that Plaintiff has satisfied the

28

standards for final approval of a class action settlement under federal law. Furthermore, as set forth above, the Court finds the negotiated attorneys' fees and costs amount reasonable and fair.  Finally, the class representative incentive payment is reasonable.

## JUDGMENT AND ORDER OF DISMISSAL

This Court **APPROVES** the settlement and **ORDERS** the parties to effectuate the settlement agreement according to its terms.

The Court **DISMISSES** this case on the merits and with prejudice pursuant to the terms of the parties' settlement agreement.

Upon the effective date, the Plaintiff, and each and every class member who have not opted out of the settlement, and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the released claims against each and every one of the Defendant Releasees.

If this Judgment and the settlement do not become final and effective in accord with the terms of the settlement agreement, then this Judgment and all orders entered in connection therewith shall be deemed null and void and shall be vacated.

The Court shall not retain continuing jurisdiction over implementation of the settlement or future disputes over construing, enforcing, or administering the settlement.

**IT IS SO ORDERED**.

DATED:  July 16, 2013

Hon. Michael M. Anello
United States District Judge